**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-3329

UNITED STATES OF AMERICA,

       Plaintiff,

   v.

STATE OF COLORADO;
COLORADO COMMISSION ON HIGHER EDUCATION;
COLORADO DEPARTMENT OF HIGHER EDUCATION;
JB HOLSTON, in his official capacity as Executive Director of the Colorado Department of
Higher Education,

       Defendants.

---

## COMPLAINT

---

Plaintiff, the United States of America, by and through its undersigned counsel, brings this
civil action for declaratory and injunctive relief, and alleges as follows:

### INTRODUCTION

1. Federal law prohibits illegal aliens from being eligible to receive post-secondary
education benefits based on residence within a state if such benefits are denied to U.S. citizens
residing in other states. *See* 8 U.S.C. § 1623(a). There are no exceptions. Yet, Colorado has
ignored this Congressional prohibition for over a decade.

2. In 2013, Colorado passed the Advancing Students for a Stronger Tomorrow
("ASSET") Act which allows eligible illegal alien students who are living in Colorado to access
in-state tuition. *See* Colo. Rev. Stat. § 23-7-110. In 2019, the ASSET Act was revised and now
also allows eligible illegal alien students to receive in-state financial aid. Additionally, the ASSET
Act extends eligibility for in-state tuition benefits at Colorado public universities or community
colleges to illegal aliens, while requiring U.S. citizens from other states to pay higher tuition rates.

3.    These statutes constitute blatant unequal treatment favoring illegal aliens over U.S. citizens.  Worse, such preferential treatment is squarely prohibited and preempted by Congress. Specifically, federal law mandates that "an alien who is not lawfully present in the United States *shall not* be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident."  8 U.S.C. § 1623(a) (emphasis added). Accordingly, under the Supremacy Clause of our Nation's Constitution, Colo. Rev. Stat. § 23-7-110's extension of eligibility for post-secondary education benefits to illegal aliens is unconstitutional and must yield to federal law.

4.    Courts have long said that 8 U.S.C. § 1623 does not allow illegal aliens to receive in-state tuition benefits when United States citizens are ineligible for the same. *See, e.g., Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 313 (5th Cir. 2023) (holding that Section 1623 "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same. No matter what a state says, if a state did not make U.S. citizens eligible, illegal aliens cannot be eligible"); *Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (stating that under Section 1623(a), "public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit"); *Foss v. Ariz. Bd. of Regents*, No. 1 CA-CV 18-0781, 2019 WL 5801690, at *8 (Ariz. Ct. App. Nov. 7, 2019) ("Section 1623 is directed at institutional practices, curtailing the authority of educational institutions to grant in-state tuition benefits to undocumented aliens. . . .");

5.    Numerous courts have struck down similar in-state tuition laws as unconstitutional based on Section 1623's preemptive effect. *United States v. Texas*, 350 F.R.D. 74, 79–81 (N.D. Tex. 2025); *see also United States v. Texas*, No. 7:25-CV-00055, 2025 WL 1583869, at *1 (N.D.

Tex. June 4, 2025) (permanently enjoining Texas defendants from enforcing Texas Education Code §§ 54.051(m) and 54.052(a) because the challenged provisions violated the Supremacy Clause), *aff'd United States v. Texas et al.*, --- F.4th ---, No. 25-10898, 2026 WL 1983151 (5th Cir. 2026); *United States v. Oklahoma*, No. 6:25-cv-00265, ECF 23 at 1 (E.D. Okla. Aug. 29, 2025) (Order and Final Consent Judgment); *see also United States v. Oklahoma*, No. 6:25-cv-00265, ECF 11 at 1 (E.D. Okla. Aug. 7, 2025) (Report and Recommendation) (holding that Section 1623(a) expressly preempts Oklahoma laws providing that individuals "who are not lawfully present in the United States may qualify for in-state tuition or nonresident tuition waivers if they meet certain residency and high school graduation criteria"); *United States v. Nebraska*, --- F.Supp.3d--- 2026 WL 1584862 *27 (D. Neb. June 3, 2026) (holding Nebraska laws were preempted by Section 1623(a) because "they allow aliens unlawfully present in the United States to qualify as 'residents' of Nebraska for the purpose of post-secondary education benefits but deny such benefits to United States citizens of other states'"); *United States v. Kentucky Council on Postsecondary Educ., et al.*, No. 3:25-cv-00028, 2026 WL 880597 (E.D. Ky. Mar. 31, 2026) (holding Kentucky regulation violated federal law, 8 U.S.C. § 1621(d), because it was a regulation, not an enacted State law as required by Section 1621(d)). This Court should do the same.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

7. Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because: (1) all Defendants reside in this judicial district, and (2) a substantial portion of the events giving rise to this Complaint arose from events occurring within this judicial district.

8. The Court has the authority to provide the relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2; 28 U.S.C. §§ 1651, 2201, and 2202; and the Court's inherent equitable powers.

3

**PARTIES**

9. Plaintiff, the United States of America, regulates immigration under its inherent, constitutional, and statutory authorities. Plaintiff enforces federal immigration laws through its Executive agencies, including the Department of Justice, Department of Homeland Security ("DHS"), and DHS component agencies, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, and U.S. Customs and Border Protection.

10. Defendant State of Colorado is a state of the United States.

11. Defendant Colorado Commission on Higher Education ("CCHE") is the chief policy-making body overseeing all public education in the state, including the programs at issue in this lawsuit. *See* Colo. Rev. Stat. §§ 23-1-105, 23-2-103.1.

12. Defendant Colorado Department of Higher Education ("CDHE") implements the CCHE's policies, including the programs at issue in this lawsuit. *See id.* § 24-1-114.

13. Defendant JB Holson is the Executive Director of the Colorado Department of Higher Education. *See id.* § 24-1-114. In that capacity, Mr. Holson is responsible for implementing Colorado's student financial assistance programs, including, but not limited to, appointment of the members of the Colorado Opportunity Scholarship Initiative Advisory Board. *Id.* § 23-3.3-1004(1). He is sued in his official capacity.

**FEDERAL LAW**

14. The Constitution empowers Congress to "establish an uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3.

15. The Constitution also vests the President of the United States with "[t]he executive Power," U.S. Const. art. II, § 1, and authorizes the President to "take Care that the Laws be

4

faithfully executed," U.S. Const. art. II, § 3, which necessarily includes his duty to take care over immigration matters.

16.     The United States has inherent, well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from its inherent obligations as a sovereign, the Constitution, and numerous acts of Congress. *See, e.g.*, *Fong Yue Ting v. United States*, 149 U.S. 698, 711 (1893) ("The right to exclude or to expel all aliens, or any class of aliens, absolutely or upon certain conditions, in war or in peace, [is] an inherent and inalienable right of every sovereign and independent nation, essential to its safety, its independence, and its welfare . . . ."); *Ping v. United States*, 130 U.S. 581, 603–04 (1889) ("Jurisdiction over its own territory to that extent is an incident of every independent nation. It is a part of its independence. If it could not exclude aliens it would be to that extent subject to the control of another power."); *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950) ("The exclusion of aliens is a fundamental act of sovereignty. The right to do so stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation. When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing an inherent executive power.").

17.     Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish immigration laws. *See Fiallo v. Bell*, 430 U.S. 787, 798 (1977) (explaining that matters of immigration concern "policy questions entrusted exclusively to the political branches of our Government," leaving "no judicial authority" for courts "to substitute [their] political judgment for that of the Congress").

18.     In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA") and the Illegal Immigration Reform and Immigrant

5

Responsibility Act ("IIRIRA"). *See* PRWORA, Pub. L. No. 104-193, 110 Stat. 2268 (1996); IIRIRA, Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (1996). Those Acts sought to encourage self-sufficiency among immigrants, limit their dependence on public assistance, and prevent public benefits from serving as an incentive for illegal immigration. *See id.*; *see also* 8 U.S.C. § 1601(1) ("Self-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes.").

19. Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs, but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations." 8 U.S.C. § 1601(2)(A).

20. Congress also emphasized that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." *Id.* § 1601(2)(B).

21. Moreover, Congress determined that "[i]t is a compelling government interest to enact new rules for eligibility and sponsorship agreements in order to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits." *Id.* § 1601(5)-(6).

22. Accordingly, a state may not offer in-state tuition (or "resident tuition") benefits to illegal aliens present in the United States based on their residence in the state, if those same benefits are denied to American citizens from other states. *See id.* § 1623(a). IIRIRA included a clear "[l]imitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." *Id.*

23. Section 1623(a) provides that:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

*Id.* § 1623(a).

24.    Accordingly, under 8 U.S.C. § 1623(a), illegal aliens present in the United States are not eligible for postsecondary education benefits based on state residency unless those same benefits are also offered to all American citizens, regardless of their state of residence.

25.    On February 19, 2025, President Trump issued Executive Order 14218, *Ending Taxpayer Subsidization of Open Borders*,[1] ordering federal departments and agencies to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens." *Id*. § 2(a).

26.    On April 28, 2025, President Trump issued Executive Order 14287, *Protecting American Communities From Criminal Aliens*,[2] directing relevant officials to ensure the "[e]qual [t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful, preempted by federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens." *Id*. § 5.

27.    These Executive Orders emphasize that state governments must not confer greater benefits to illegal aliens present in our Nation than to U.S. citizens.  They also reflect Congress's end—expressed in multiple provisions of the Immigration and Nationality Act—to reduce incentives for illegal immigration by limiting access to certain public benefits intended for U.S. citizens.

---

[1] Executive Order, *Ending Taxpayer Subsidization of Open Borders*, 90 Fed. Reg. 10581 (Feb. 19, 2025), https://perma.cc/V5KX-DX6Q.
[2] Executive Order, *Protecting American Communities From Criminal Aliens*, 90 Fed. Reg. 18761 (Apr. 28, 2025), https://perma.cc/83KY-N8Q9.

**THE COLORADO LAWS AND POLICY**

**I.        Colorado Makes Illegal Aliens Eligible for Resident Tuition.**

28.        Colorado law rewards an illegal alien with eligibility for in-state tuition, based on residency within Colorado, while explicitly denying eligibility for resident tuition rates to U.S. citizens who are not Colorado residents.  *See* Colo. Rev. Stat. § 23-7-110 (outlining tuition classification); *see also id.* § 23-3.3-101(2) (defining "in-state student" for article 3.3 purposes as "a student at an institution of higher education who meets the criteria established by article 7 of this title").

29.        The CCHE is responsible for establishing "policies for the public system of higher education for determining student residency status for tuition classification purposes."  *Id.* § 23-1-105(5); *see also id.* § 23-1-102.  The Commission prescribes financial reporting policies and can "seek, receive, and disburse federal, state, and private grants, gifts, and trusts for statewide or multiinstitutional purposes."  *Id.* § 23-1-105(4).

30.        The CDHE administers the "policies, guidelines, and procedures" set by the CCHE. *Id.* § 23-2-103.1; *see also id.* § 24-1-114.

31.        Colorado, like most states, charges two separate tuition rates at Colorado public universities, colleges, and community colleges: resident and nonresident tuition.  *See id.* §§ 23-3.3-101, 23-7-110.

32.        For example, the University of Colorado Boulder charges Colorado residents approximately $35,456 for one academic year for tuition but charges non-Colorado residents approximately $66,500.[3]

---

[3] The University of Colorado Boulder, *Incoming Undergraduate Cost For Fall 2026 and Spring 2027*, https://perma.cc/UCC5-JZ48 (last visited July 10, 2026).

33.     Similarly, Colorado School of Mines charges Colorado residents approximately $46,480 for one academic year of tuition and non-Colorado residents approximately $71,470.[4]

34.     The same structure of substantially less-expensive in-state tuition for those classified as Colorado residents as compared to non-Colorado residents holds across community colleges in Colorado as well.[5]

35.     Since 2013, the ASSET Act has rewarded illegal aliens who violate our Nation's immigration laws with eligibility for these in-state tuition benefits in Colorado while denying that same benefit to U.S. citizens who are not residents of Colorado.  *See* Colo. Rev. Stat. § 23-7-110.

36.     In 2022, the ASSET Act was amended to expand in-state tuition access to illegal aliens by reducing the Colorado high school attendance requirement from three years to one year and eliminating the requirement that a student be admitted to college within 12 months of graduation.  *See* 2022 Colo. Legis. Serv. Ch. 234 (H.B. 22-1155) (amending Colo. Rev. Stat. § 23-7-110).

37.     The ASSET Act unequivocally makes illegal aliens living in Colorado eligible to receive resident tuition in Colorado.  Under the ASSET Act:

> (1) … a student, other than a nonimmigrant alien, must be classified as an in-state student for tuition purposes if:
> (a) The student either attended a public or private high school in Colorado for at least one year immediately preceding the date the student graduated from a Colorado high school or was physically present in Colorado for at least one year immediately preceding the date the student successfully completed a high school equivalency examination… and
> (b) The student has been physically present in Colorado for at least twelve consecutive months prior to enrolling in an institution.

Colo. Rev. Stat. § 23-7-110.

---

[4] Colorado School of Mines, *Understanding Cost of Attendance for Undergraduates*, https://perma.cc/8V3Q-MDJ3 (last visited July 10, 2026).
[5] *See, e.g.*, Colorado Community College System, *Our Colleges Making College Affordable*, https://perma.cc/LG7E-SD8C (last visited July 10, 2026).

38.    Nothing in Section 23-7-110 requires lawful presence in the United States for in-state eligibility.[6]

39.    Accordingly, the tuition rate for illegal aliens in Colorado who satisfy Section 23-7-110's criteria is the same tuition rate as other Colorado residents.  Conversely, a U.S. citizen that is not eligible for in-state tuition under Section 23-7-110, due to residency requirements, is required to pay higher, nonresident tuition.

## II.    Colorado Makes Illegal Aliens Eligible for Scholarships and Financial Assistance Based on Residence.

40.    Colorado law also rewards illegal aliens with eligibility for state-funded scholarships and financial assistance based on residency in Colorado while explicitly denying eligibility for the same state-funded scholarships to U.S. citizens who are not Colorado residents.

41.    Article 3.3 of Colorado Revised Statues governs student financial aid, and specifically defines "in-state student" as used throughout Article 3.3 as "a student at an institution of higher education who meets the criteria established by article 7 of this title for classification as an in-state student at a state institution of higher education," which incorporates by reference Section 23-7-110. *Id.* § 23-3.3-101(2).

42.    Additionally, Colorado makes illegal aliens eligible for state financial aid programs through CDHE's guidance[7] that conditions state financial aid on meeting Section 23-7-110's requirements.  *See* Colo. Rev. Stat. § 23-7-110.

---

[6] Upon its enactment in 2013, the ASSET Act had a third requirement that "a student seeking tuition classification as an in-state student pursuant to this section who does not have lawful immigration status must submit an affidavit to the institution to which the student is admitted, stating that the student has applied for lawful presence or will apply as soon as he or she is eligible to do so." Colo. Rev. Stat. § 23-7-110 (2013).  This affidavit requirement was repealed in 2025, *see* S.B. 25-276, 75th Gen. Assemb., 1st Reg. Sess. (Colo. 2025), making it even easier for illegal aliens to receive in-state tuition in Colorado.

[7] Colorado Application for State Financial Aid, *Fact Sheet: Colorado Application for State Financial Aid*, https://perma.cc/W9UA-Y9BJ (last visited July 10, 2026).

A.      Financial Aid Under the Colorado Application for State Financial Aid

43.     The Federal Free Application for Federal Student Aid ("FAFSA") is an application form used to determine students' eligibility for financial assistance for higher education, including federal grants.  Federal student aid, however, is not available to illegal aliens.[8]  Many states require a student to complete the FAFSA to be eligible for state financial assistance.

44.     As an alternative to FAFSA, Colorado offers the Colorado Application for State Financial Aid ("CASFA") for "students who are not eligible for Federal Student Aid, undocumented students or students from mixed status families."[9]

45.     As clarified by CDHE's guidance, eligibility for state financial aid through CASFA is conditioned on graduation from a Colorado high school or physical presence in the State for at least a year preceding completion of a high school equivalency examination and physical presence in Colorado for at least twelve consecutive months prior to enrolling in a postsecondary institution.[10]  These are the same requirements as Section 23-7-110's criteria, as evidenced by CDHE's guidance's explicit reference to "House Bill 22-1155."[11]

46.     CASFA also accepts students who do not qualify as an ASSET student under Section 23-7-110: "Students who do not have lawful immigration status and who do not meet Colorado ASSET qualifications are still encouraged to apply for institutional aid using the CASFA."[12]

---

[8] Federal Student Aid, *Undocumented Students and Financial Aid*, https://perma.cc/8ALR-JF54 (last visited July 10, 2026).

[9] Colorado Department of Higher Education, *Colorado Application for State Financial Aid*, https://perma.cc/7ZQL-695L (last visited July 10, 2026).

[10] Fact Sheet: Colorado Application for State Financial Aid, *supra* note 7.

[11] *Id*.

[12] Colorado Department of Higher Education, *FAFSA Resources*, https://perma.cc/9MLQ-ZG5D (last visited July 14, 2020); *see also* Fact Sheet: Colorado Application for State Financial Aid, *supra* note 7.

47. CASFA thus makes any illegal alien residing in Colorado eligible for financial assistance so long as the illegal alien satisfies, among other criteria, Colorado's residency requirements, while a U.S. citizen residing outside Colorado is not eligible.

B. Financial Aid Under the Colorado College Opportunity Fund Act

48. In 2004, Colorado statutorily created the Colorado College Opportunity Fund ("Fund"). *See* Colo. Rev. Stat. §§ 23-18-201–02.

49. The Fund "is a trust fund for the benefit of eligible undergraduate students." *Id.* § 23-18-201. Beginning with the state fiscal year commencing on July 1, 2005, and for each fiscal year thereafter, the Colorado General Assembly has made annual appropriations to the Fund. *Id.* § 23-18-202. The funds are disbursed as a per-credit-hour stipend to eligible students. *Id.*

50. To be "eligible" for the college opportunity fund, a student must be "enrolled at a state institution of higher education" and be "classified as an in-state student for tuition purposes." *Id.* § 23-18-102(5).

51. A student may use Section 23-7-110's requirements to establish classification as an in-state student to show eligibility for the college opportunity fund: "A student seeking tuition classification as an in-state student pursuant to this section who does not have lawful immigration status is eligible for the college opportunity fund program pursuant to" "state student financial assistance pursuant to article 3.3 of this title 23." *Id.* § 23-7-110(2). To be considered eligible, a student must confirm high school graduation by providing his or her "uniquely identifying student number provided by the local education provider" and meet the requirements of Section 23-7-110(1). *Id.*

52. "An eligible undergraduate student may use the stipend [Fund] for undergraduate courses and graduate-level courses that apply toward the student's undergraduate degree that are taken at a state or participating private institution of higher education." *Id.* § 23-18-201.

53.     Some universities also require applicants without lawful immigration status to complete and submit an affidavit affirming the "student has applied for lawful presence or will do so as soon as he or she is able to do so in order to be eligible for the Fund."[13]

54.     Pursuant to state law, the Fund makes illegal aliens residing in Colorado eligible for financial assistance so long as they satisfy, among other criteria, Section 23-7-110's requirements, including residency, while a U.S. citizen residing outside Colorado is not eligible.

C.      The Colorado Opportunity Scholarship Initiative

55.     Colorado Opportunity Scholarship Initiative ("COSI") was signed into law in 2014 and is administered by the CDHE.[14]  *See* Colo. Rev. Stat. § 23-3.3-1003. The Executive Director of the Colorado Department of Higher Education is tasked with appointing the members of the COSI Advisory Board. *Id.* § 23-3.3-1004(1).

56.     COSI awards scholarships or grants to eligible students to promote "student commitment to academic achievement and successful placement in the workforce."  *Id.* § 23-3.3-1001(1)(a).

57.     To be eligible, an individual must be "an undergraduate, in-state student who" has "[e]arned some postsecondary credits from a public or private higher education institution but did not complete a credential requiring thirty credits or more before deciding not to enroll for two or more consecutive semesters." *Id.* § 23-3.3-1006.

58.     A student who satisfies Section 23-7-110's requirements qualifies as an in-state student eligible for COSI. That is because Article 3.3 defines "in-state student" as "a student at an institution of higher education who meets the criteria established by article 7 of this title for

---

[13] University of Colorado Denver, *Financial Aid ASSET DACA Students*, https://perma.cc/GT6G-KY3X (last visited July 10, 2026).
[14] Colorado Department of Higher Education, *About COSI*, https://perma.cc/795F-RWT8 (last visited July 10, 2026).

classification as an in-state student at a state institution of higher education"—a specific reference to Section 23-7-110. *Id.* § 23-3.3-101(2). *See also id.* § 23-7-102(5).

59.    COSI does not require a social security number, affidavit stating immigration status, or any other identifier that may disqualify an illegal alien from applying. *See id.* § 23-3.3-1006.

60.    COSI offers eligible students access to various scholarships, namely, the Matching Student Scholarships (MSS) and the Community Partnership Program (CPP).

61.    Funds distributed through COSI assist students in covering the cost of attendance, graduating college, reducing the time to earn a degree and reducing disparities between the academic achievements of certain students, among other things. *See id.* § 23-3.3-1004.

62.    In its first six years, COSI awarded $66.5 million in state funds to approximately 100,000 students.[15]

63.    Thus, COSI, through its reference to Section 23-7-110, makes illegal aliens residing in Colorado eligible for financial assistance, so long as they satisfy, among other criteria, residency requirements, while a U.S. citizen residing outside Colorado is not eligible.

D.    Colorado Public University Scholarships

64.    Most public Colorado universities use Section 23-7-110's definition of "in-state" when deciding which students may qualify for the universities' own financial aid packages or scholarships. *See* Colo. Rev. Stat. §§ 23-7-102(5), 23-7-110.

65.    For example, the University of Colorado Boulder offers the CU Promise Program (a combination of grants that cover tuition and fees for students with significant financial need[16])

---

[15] Colorado Department of Higher Education, *About COSI*, https://perma.cc/795F-RWT8 (last visited July 10, 2026).
[16] University of Colorado Boulder, *Office of Financial Aid*, https://perma.cc/BF3V-Q7YP (last visited July 22, 2026).

or combinations of CU Boulder-funded and Colorado state-funded grants to both ASSET eligible students and DACA students.[17]

66.    Students at University of Colorado Boulder can receive up to $10,300 per year in grants and scholarships from the university alone.[18]

67.    Similarly, at Colorado School of Mines "[a]ll prospective first year students who are U.S. Citizens or Permanent Residents, as well as students with undocumented status eligible for ASSET are automatically evaluated for merit awards based on the admission application."[19] *See* Colo. Rev. Stat. § 23-7-110.

68.    Colorado community college students also have access to state financial aid. "DREAMers [Development, Relief, and Education for Alien Minors], DACA, and undocumented students attending CCD [Community College of Denver] that meet ASSET eligibility may qualify for state aid."[20]

69.    Thus, through Section 23-7-110, illegal aliens residing in Colorado are eligible for scholarships so long as they satisfy, among other criteria, Colorado residency requirements, while U.S. citizens residing outside Colorado are not eligible.

---

[17] University of Colorado Boulder, *Office of Financial Aid*, https://perma.cc/KX7S-PCZU (last visited July 10, 2026).

[18] *Id.*

[19] Colorado School of Mines, *Scholarship Information*, https://perma.cc/J3ER-DQQ4 (last visited July 22, 2026).

[20] Community College of Denver, *DREAMers & Undocumented Student Information*, https://perma.cc/EHY2-8VHF (last visited July 10, 2026).

**CLAIMS FOR RELIEF**

**COUNT I**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF COLO. REV. STAT. § 23-7-110 - TUITION)**

70.    The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

71.    The Supremacy Clause of our Nation's Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof … shall be the supreme Law of the Land … any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Art. VI, cl. 2.

72.    The preemption doctrine is derived from the Supremacy Clause. Express preemption occurs when Congress includes express language within the statute indicating its preemptive intent. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).

73.    Section 23-7-110 extends eligibility for in-state tuition benefits to illegal aliens contrary to Congress's prohibition on providing eligibility for postsecondary education benefits (lower, resident tuition rates) based on residency to illegal aliens present in the United States that are not available to all U.S. citizens regardless of residency.  *See* 8 U.S.C. § 1623(a).

74.    Accordingly, the challenged provision, Colo. Rev. Stat. § 23-7-110, is preempted and unconstitutional.

**COUNT II**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF COLO. REV. STAT. § 23-7-110 – FINANCIAL AID)**

75.    The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

76.    Section 23-7-110 extends eligibility for in-state financial aid benefits to illegal aliens contrary to Congress's prohibition on providing eligibility for postsecondary education

16

benefits based on residency to illegal aliens present in the United States that are not available to all U.S. citizens regardless of residency.  *See* 8 U.S.C. § 1623(a).

77.    Accordingly, the challenged provision, Colo. Rev. Stat. § 23-7-110, is preempted and unconstitutional.

## COUNT III
### VIOLATION OF THE SUPREMACY CLAUSE
#### (PREEMPTION OF COLO. REV. STAT. ANN § 23-18-201 – FINANCIAL AID)

78.    The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

79.    Section 23-18-201 extends eligibility for postsecondary education benefits to illegal aliens contrary to Congress's prohibition on providing eligibility for postsecondary education benefits based on residency to illegal aliens present in the United States that are not available to all U.S. citizens regardless of residency.  *See* 8 U.S.C. § 1623(a).

80.    Accordingly, the challenged provision, Colo. Rev. Stat. § 23-18-201, is preempted and unconstitutional.

## COUNT IV
### VIOLATION OF THE SUPREMACY CLAUSE
#### (PREEMPTION OF COLO. REV. STAT. ANN §§ 23-3.3-1001, 23-3.3-1003 – FINANCIAL AID)

81.    The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

82.    Sections 23-3.3-1001 and 23-3.3-1003 extend eligibility for postsecondary education benefits to illegal aliens contrary to Congress's prohibition on providing eligibility for postsecondary education benefits based on residency to illegal aliens present in the United States that are not available to all U.S. citizens regardless of residency.  *See* 8 U.S.C. § 1623(a).

17

83.     Accordingly, the Court should find the challenged provisions, Colo. Rev. Stat. §§ 23-3.3-1001, 23-3.3-1003, unconstitutional.

**PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests the following relief:

1.     That this Court enters a judgment declaring Colo. Rev. Stat. Ann § 23-7-110 violates the Supremacy Clause because it extends State and local public benefits to resident illegal aliens but not nonresident U.S. citizens through State law and is therefore unconstitutional and preempted.

2.     That this Court enters a judgment declaring Colo. Rev. Stat. Ann § 23-18-201 violates the Supremacy Clause because it extends eligibility for postsecondary education benefits to resident illegal aliens but not nonresident U.S. citizens, and is therefore unconstitutional and preempted;

3.     That this Court enter a judgment declaring that Colo. Rev. Stat. Ann §§ 23-3.3-1001 and 23-3.3-1003 violate the Supremacy Clause because the statutes extend eligibility for postsecondary education benefits to resident illegal aliens but not nonresident U.S. citizens, and are therefore unconstitutional and preempted;

4.     That this Court issue a permanent injunction that prohibits Defendants as well as their successors, agents, and employees, from enforcing Colo. Rev. Stat. Ann § 23-7-110, or any similar subsequent statute, because it extends State and local public benefits to resident illegal aliens but not nonresident U.S. citizens through State law;

5.     That this Court issue a permanent injunction that prohibits Defendants as well as their successors, agents, and employees, from enforcing Colo. Rev. Stat. § 23-18-201, or any similar subsequent statute, because it extends eligibility for postsecondary education benefits to resident illegal aliens but not nonresident U.S. citizens;

6.      That this Court issue a permanent injunction that prohibits Defendants as well as their successors, agents, and employees, from enforcing Colo. Rev. Stat. Ann §§ 23-3.3-1001 and 23-3.3-1003, or any similar subsequent statutes, because they extend eligibility for postsecondary education benefits to resident illegal aliens but not nonresident U.S. citizens;

7.      That this Court award the United States its costs and fees in this action; and

8.      That this Court award any other relief it deems just and proper.

Respectfully Submitted

STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANNA EDWARDS
Counsel to the Associate Attorney General

JACQUELINE COLEMAN SNEAD
Deputy Director
Civil Division
Enforcement and Affirmative Litigation Branch

s/Luke A. Miller
LUKE A. MILLER
Trial Attorney
United States Department of Justice
Civil Division
Enforcement and Affirmative Litigation Branch
950 Pennsylvania Ave NW
Washington, D.C. 20530
Tel: (202) 598-7479
Email: Luke.Miller2@usdoj.gov

*Attorneys for the United States*

19