**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-03329-CNS

UNITED STATES OF AMERICA,

Plaintiff,

v.

STATE OF COLORADO;
COLORADO COMMISSION ON HIGHER EDUCATION;
COLORADO DEPARTMENT OF HIGHER EDUCATION;
JB HOLSTON, in his official capacity as Executive Director of the Colorado Department of Higher Education,

Defendants.

---

**MOTION TO DISMISS**

---

## TABLE OF CONTENTS

INTRODUCTION ........ 1

BACKGROUND ........ 2

I. Federal law: Section 1623........ 2

II. The ASSET Act. ........ 3

III. Plaintiff's challenge to the ASSET Act and similar laws........ 4

LEGAL STANDARDS ........ 5

ARGUMENT ........ 6

I. Plaintiff lacks standing because it has not pleaded any injury........ 6

II. The ASSET Act does not conflict with Section 1623. ........ 8

A. The ASSET Act does not provide postsecondary education benefits "on the basis of residence." ........ 9

B. Nonresident citizens are eligible for the same benefits as those available to undocumented individuals under the ASSET Act. ........ 18

III. Section 1623 cannot preempt the ASSET Act. ........ 21

A. Section 1623 has no preemptive effect because it regulates States, not private actors. ........ 21

B. Adopting Plaintiff's reading of Section 1623 would violate the anticommandeering doctrine........ 23

CONCLUSION ........ 25

## INTRODUCTION

Consistent with federal law, Colorado generally permits students who graduate from Colorado public and private high schools, regardless of their state residence or immigration status, to receive in-state tuition and aid while attending Colorado institutions of higher education. But Plaintiff, the United States, now claims that Colorado has been violating federal law for years and years, including throughout the first Trump Administration. Colorado is in good company—this lawsuit is part of Plaintiff's ever-expanding campaign against dozens of state laws passed by legislatures across the political spectrum. Like those other suits, Plaintiff misapplies longstanding federal law by claiming that Colorado provides in-state tuition and aid to undocumented students "on the basis of residence," purportedly in violation of 8 U.S.C. § 1623. In fact, eligibility under Colorado's ASSET Act is based on nonresidence criteria—the word residence does not even appear in the law—and many nonresidents are eligible. Plaintiff nevertheless asks this Court to rewrite the plain statutory text of Section 1623 from "on the basis of residence" to instead cover any criteria that may be correlated with residence. But that is not the law that Congress wrote, and it is up to Congress, not the courts, to amend a law that is purportedly not achieving this Administration's political goals.

Plaintiff's claims fail for myriad reasons, and its case should be dismissed. First, Plaintiff lacks standing because it has alleged no harm to the United States attributable to a Colorado law that governs how Colorado allocates its own resources to students

attending state universities. Second, even if Plaintiff had alleged harm, it nonetheless fails to state a claim because there is no conflict between Colorado and federal law and thus no preemption. Colorado determines eligibility based on an education requirement and "physical presence," not "residence," terms that have separate meanings under both Colorado and federal law. Furthermore, federal law does not prohibit giving in-state tuition to undocumented students but rather requires states to provide identical benefits to nonresident citizens, which Colorado does. To prevail on its claims, Plaintiff requires the Court to misread federal law to hold that Colorado must provide in-state tuition and benefits to *every* U.S. citizen before it may provide them to *any* undocumented student, a nonsensical reading that finds no support in the text. Third, beyond failing to identify any harm or conflict between Colorado and federal law, Plaintiff's claims fail because Congress cannot directly regulate the States or commandeer them to do its bidding.

For all these reasons, Plaintiff's claims fail and its Complaint must be dismissed.

## BACKGROUND

### I. Federal law: Section 1623.

In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), *see* Pub. L. No. 104-208, 110 Stat. 3009 (1996). Within a subtitle addressing eligibility of aliens for state public assistance and benefits, Congress enacted 8 U.S.C. § 1623, which purports to regulate States' authority to provide education benefits to undocumented students. It provides:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence

> within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a).

## II. The ASSET Act.

In 2013, nearly two decades after Congress passed Section 1623, the Colorado General Assembly enacted Senate Bill 13-033, the Advancing Students for a Stronger Tomorrow ("ASSET") Act, codified as Colorado Revised Statute § 23-7-110. The ASSET Act supports Colorado's Institutions of Higher Education by making it easier for students educated by Colorado's public and private high schools to enroll. The ASSET Act, as originally enacted, required Colorado's public institutions to provide in-state tuition to any student, other than a nonimmigrant alien, who: (1) attended public or private high school in Colorado for at least three years immediately preceding graduation or completed a general equivalency diploma in Colorado; and (2) was admitted to a Colorado Institution within twelve months of graduating or completing the diploma program. C.R.S. § 23-7-110(1) (2013). In addition, the Act required students without lawful immigration status to attest by affidavit that they had applied for lawful presence or would do so when eligible. *Id.* § 23-7-110(2)(a) (2013).

The General Assembly has since amended the ASSET Act to direct Colorado's Institutions to qualify more students. Its current version, which Plaintiff challenges here, states in relevant part:

> Tuition classification of students who successfully complete high school or a high school equivalency examination in Colorado
>
> (1) Notwithstanding any other provision of this article [governing classification of students for tuition purposes] to the contrary, a student, other than a nonimmigrant alien, must be classified as an in-state student for tuition purposes if:
>
> > (a) The student either attended a public or private high school in Colorado for at least one year immediately preceding the date the student graduated from a Colorado high school or was physically present in Colorado for at least one year immediately preceding the date the student successfully completed a high school equivalency examination, as defined in section 22-33-102(8.5), in Colorado; and
> >
> > (b) The student has been physically present in Colorado for at least twelve consecutive months prior to enrolling in an institution.

C.R.S. § 23-7-110(1) (2026). In addition to reducing the minimum time enrolled in Colorado's public or private high schools from three years to one, the General Assembly eliminated the affidavit requirement. *Compare id. with* C.R.S. § 23-7-110(2)(a) (2013).

The General Assembly separately directed Colorado's institutions to make those students that qualify under the ASSET Act eligible for certain state financial assistance. *See, e.g.*, C.R.S. §§ 23-3.3-101(2) and 23-3.3-102(3.5).

## III. Plaintiff's challenge to the ASSET Act and similar laws.

For more than a decade, Colorado has provided in-state tuition and financial aid to students completing high school or a high school equivalency examination in Colorado under the ASSET Act, in compliance with Section 1623. But recently, the United States has invoked a novel interpretation of Section 1623 to methodically target and override States' laws and the will of their elected representatives. In less than 18

months, the United States has sued 24 states and the District of Columbia, claiming legislatures across the country and across the political spectrum have ignored and violated Section 1623 for years and years.

In four counts, Plaintiff claims that, pursuant to the Supremacy Clause, Section 1623 preempts the ASSET Act. Compl. ¶¶ 70–83. Plaintiff also challenges C.R.S. §§ 23-18-201, 23-3.3-101, and 23-3.3-1003, because those statutes apply the ASSET Act in determining eligibility for certain financial assistance. In other words, all of Plaintiff's claims turn on constitutionality of the ASSET Act. As a result, the arguments below focus on the ASSET Act because all the claims rise or fall based on that Act.

## LEGAL STANDARDS

A complaint may be dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1). Plaintiff bears the burden of establishing the Court's subject matter jurisdiction, because they are "the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008). "When resolving a facial attack on the allegations of subject matter jurisdiction, a court must accept the allegations in the complaint as true." *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 507 (10th Cir. 2023). But a court need not accept conclusory allegations, unwarranted inferences, or legal conclusions. *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994).

Under Rule 12(b)(6), a complaint may also be dismissed if it fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court is not required to accept labels, conclusory allegations, naked assertions, or formulaic recitations of the elements. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021). A claim may be dismissed "either because it asserts a legal theory not cognizable as a matter of law or because the claim fails to allege sufficient facts to support a cognizable legal claim." *Essex Ins. Co. v. Tyler*, 309 F. Supp. 2d 1270, 1271 (D. Colo. 2004).

## ARGUMENT

### I. Plaintiff lacks standing because it has not pleaded any injury.

The Constitution confines the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. Standing is "a threshold issue in *every case* before a federal court." *Hutchinson v. Pfeil*, 211 F.3d 515, 523 (10th Cir. 2000) (citation omitted). To establish standing, a plaintiff must prove: (1) they "ha[ve] suffered or likely will suffer an injury in fact," (2) "the injury likely was caused or will be caused by the defendant," and (3) "the injury likely would be redressed by the requested judicial relief." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024).

Plaintiff "bears the burden of establishing" its standing. *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016). Plaintiff has not met that burden here because the Complaint contains no allegation that the federal government has been harmed in any manner traceable to the ASSET Act. Instead, Plaintiff asserts, without more, that federal law preempts the ASSET Act. *See Compl.* ¶¶ 70–83. But the mere existence of a

preempted state law does not give rise to a sovereign injury sufficient to establish standing, and this Court thus lacks jurisdiction.

The federal government, like the States, may assert an "injury to its sovereignty arising from violation of its laws." *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000). This happens all the time; state and federal governments alike have standing to enforce their laws against regulated parties. But States are not "regulated" by, and they cannot "violate," a federal preemption provision. For good reason: the Supremacy Clause, on which preemption is based, is "not the 'source of any federal rights.'" *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (2015) (citation omitted). It "simply provides 'a rule of decision'" for when state and federal laws conflict. *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 477, 479 (2018) (citation omitted). Accordingly, "the mere existence of a preempted state law" does not create "a sovereign injury to the federal government." *United States v. California*, 824 F. Supp. 3d 1079, 1083 (C.D. Cal. 2026). And there is consequently no Supremacy Clause "violation" that "the United States may vindicate through suit." *Id.* at 1084.

To plead sufficient injury, then, the federal government must allege more. For example, it can allege that a state law interferes with federal operations or enforcement efforts. *See, e.g.*, *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 899–900 (10th Cir. 2016) (alleging that a state court rule "deterred federal prosecutors from issuing otherwise-permissible attorney subpoenas, [and] thereby limit[ed] the presentation of relevant evidence"). Or it can allege that a state law caused or required it to expend

resources. *See, e.g.*, *United States v. Missouri*, 114 F.4th 980, 984 (8th Cir. 2024) (alleging that state law caused state officials to "withdr[a]w resources and manpower that further[ed] the enforcement of federal law"). But whatever theory of injury Plaintiff pursues, it must allege facts; it cannot rest on allegations of preemption without some actual or threatened interference with its authority. *See United States v. West Virginia*, 295 U.S. 463 (1935).

Here, the Complaint is entirely silent as to what injury, if any, the federal government has suffered. The words "harm" and "injury" do not even appear in the Complaint. It is Plaintiff's burden to plead facts showing that the ASSET Act has caused the federal government some injury. *Spokeo*, 578 U.S. at 338. Because Plaintiff has failed to do so, its Complaint must be dismissed.

## II. The ASSET Act does not conflict with Section 1623.

Plaintiff's claims also fail because the ASSET Act does not conflict with Section 1623. A state law is preempted only to the extent that it actually conflicts with federal law. *See English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990). The text of the two laws, context, and canons of interpretation all point to the same conclusion: there is no conflict between the ASSET Act and Section 1623. *See Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019) (explaining that in determining the preemptive effect of a statute, the Supreme Court looks to the text and context of the law in question and is guided by the traditional tools of statutory interpretation).

Rather than imposing a blanket prohibition on eligibility for undocumented students, Section 1623 provides that those students "shall not be eligible" for postsecondary education benefits "on the basis of residence within a State" unless "a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a); *see also Martinez v. Regents of Univ. of California*, 50 Cal. 4th 1277, 1292 (Cal. 2010) ("[S]ection 1623 does not impose an absolute ban" on postsecondary education benefits for undocumented students.).

To determine whether the ASSET Act is expressly preempted by Section 1623, the Court must answer two questions. First, whether eligibility is premised "on the basis of residence." Second, if so, whether a U.S. citizen or national is also eligible without regard to whether they are a resident. Both parts must be satisfied for Section 1623 to preempt the ASSET Act. If the answer to either question is "no," then Section 1623 does not preempt. And here, because the answer to each question is "no," Section 1623 does not preempt the ASSET Act for two independent reasons.

### A. The ASSET Act does not provide postsecondary education benefits "on the basis of residence."

The ASSET Act does not provide postsecondary education benefits "on the basis of residence" in Colorado, because "on the basis of" is a narrow "but for" standard. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 335 (2020) (noting that "on the basis of" is "strongly suggestive of a but-for causation standard" (citation omitted)). In order to qualify for in-state tuition and state financial assistance

under the ASSET Act, a student must meet the following criteria: (1) attendance at a Colorado high school for at least one year prior to graduation at a Colorado high school, or successful completion of a high school equivalence examination in Colorado, and (2) physical presence in Colorado for at least twelve consecutive months prior to enrollment at an institution of higher education. C.R.S. § 23-7-110(1). Neither of these criteria is a residency requirement. To the contrary, one could meet both of these criteria without being a resident of Colorado, thus unequivocally demonstrating that residency is not a "but for" requirement of the ASSET Act. Because the ASSET Act eligibility is not "on the basis of residence," there is no conflict with Section 1623.

#### 1. Criterion #1: Graduating from a Colorado high school or completing a high school equivalency exam in Colorado is not "on the basis of residency."

As to the first requirement, high school attendance, high school graduation, and completion of a high school equivalency exam are education requirements, not residency requirements. *See, e.g., United States v. Walz*, 825 F. Supp. 3d 897, 909 (D. Minn. 2026) (finding that while high school attendance and high school graduation requirements require some connection to the State, they do not require residency in that State); *Martinez,* 50 Cal. 4th at 1290 (finding that the requirements of a State's high school degree or equivalent are not residence requirements). Plainly, students can meet this criterion without being a Colorado resident. For example, an out-of-state boarding student can easily meet this requirement without ever being a Colorado resident. Likewise, a student who previously lived in Colorado and graduated from a Colorado

high school but is a resident of another State meets this requirement. Simply stated, this education requirement is not "on the basis of residency" because many non-Colorado residents meet the criterion.

**2. Criterion #2: Physical presence is not "on the basis of residency."**

The ASSET Act's second requirement—that a student be physically present in Colorado prior to enrollment—is also separate from residency, a distinction recognized by both Colorado and federal law.

**i. Under Colorado law, physical presence is not the same as "residence."**

Under Colorado law, a person is a resident if the person has a permanent home in Colorado with an intent to remain. *Gordon v. Blackburn*, 618 P.2d 668, 671 (Colo.1980) (legal residence, or domicile, is created if a person has the intention of permanently residing "in a place he considers his 'home'" (citation omitted)); *Sharp v. McIntire*, 46 P. 115, 116 (Colo. 1896) (residence or domicile "requires, not only a personal presence for the requisite time, but a concurrence therewith of an intention to make the place of inhabitancy the true home").

Colorado's general tuition classification statutes follow this principle. Ordinarily, students must both have their permanent home in Colorado and intend to remain in Colorado to qualify for in-state status. *See* C.R.S. § 23-7-102(5) (defining "in-state student" as "a student who has been *domiciled* in Colorado for one year or more immediately preceding registration at any institution of higher education in Colorado"

(emphasis added)). Colorado law expressly ties domicile to both a student's permanent home and intent to remain in Colorado. *See* C.R.S. § 23-7-102(2) ("'Domicile' means a person's true, fixed, and permanent home and place of habitation. It is the place where he intends to remain and to which he expects to return when he leaves without intending to establish a new domicile elsewhere."). Thus, to demonstrate residency, students must show significantly more than evidence of physical presence in Colorado. Instead, students must provide evidence of their "true, fixed, and permanent home" and their intent to remain in Colorado.[1] *See, e.g.*, C.R.S. § 23-7-103(2).

The ASSET Act's criterion, on the other hand, is based exclusively on "physical presence," not residence. In fact, the General Assembly's use of "physical presence" in the ASSET Act is an *exception to* the residency requirements of Colorado's general tuition classification statutes establishing in-state status.[2] Because the ASSET Act does *not* require students to demonstrate residency, the ASSET Act does not make students eligible for post-secondary education benefits "on the basis of residence" under Colorado law. On the contrary, students who are not Colorado residents are nevertheless eligible under the ASSET Act.

---

[1] Colorado places the burden on the student to prove residency by clear and convincing evidence. *See* C.R.S. § 23-7-103(2)(k).

[2] The ASSET Act is an exception to the general tuition classification statute presumptions and rules. "The presumptions and rules in this section shall determine tuition classification except when exceptions are made by the general assembly in other sections of this article." C.R.S. § 23-7-103(5).

**ii. Federal law also recognizes that "physical presence" is not the same as "residence."**

Like Colorado, federal law also distinguishes between "physical presence" and "residence," including under immigration law. As explained above, Section 1623 was enacted as part of IIRIRA and is codified within the Immigration and Nationality Act ("INA"). Under the INA, the term "residence" is defined as "the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(a)(33). Although the INA definition differs from Colorado's, the INA similarly distinguishes between "residence" and "physical presence." The INA uses "residence" and "physical presence" as separate, distinct terms. *See* 8 U.S.C. § 1101(a)(27)(I)(i) ("an immigrant who is the unmarried son or daughter of an officer or employee . . . has *resided* and been *physically present* in the United States") (emphasis added). "Notably, the [INA] distinguishes between 'residence' and mere 'physical presence' requirements when determining how groups of differently situated foreign-born children of U.S. citizens may obtain citizenship." *Abuhajeb v. Pompeo*, 531 F. Supp. 3d 447, 457 (D. Mass. 2021).

Confirming the distinction between "residence" and "physical presence" under the INA, the United States Citizenship and Immigration Services ("USCIS") applies different meanings to those terms. According to the USCIS, "The term residence should not be confused with physical presence, which refers to the actual time a person is in the United States, regardless of whether he or she has a residence in the United States." *See* Ex. A, USCIS, U.S. Dep't of Homeland Sec., PA-2019-05, *Policy Alert: Defining*

*"Residence" in Statutory Provisions Related to Citizenship* (Aug. 28, 2019); *see also Policy Manual, Chapter 2 - Definition of Child and Residence for Citizenship and Naturalization*, USCIS (Sep. 23,2026), E. Definitions of U.S. Residence and Physical Presence, https://www.uscis.gov/policy-manual/volume-12-part-h-chapter-2#footnotelink-32 ("By contrast [to residence], physical presence refers to the actual time a person is in the United States, regardless of whether that person has or had a residence in the United States.")

Courts have similarly interpreted "residence" and "physical presence" as terms with different meanings under the INA. While "residence" is established under the INA by an individual's principal, actual dwelling place, "physical presence" is established by an individual's time spent in a location. *See Fernandez Cardona v. Garland*, No. 7:19-CV-2, 2021 WL 3148868, at *4 (S.D. Tex. June 22, 2021), *report and recommendation adopted sub nom. Fernandez Cardona v. Barr*, No. 7:19-CV-002, 2021 WL 3144540 (S.D. Tex. July 26, 2021) ("Physical presence . . . has its literal meaning and is computed by actual time spent in the United States.") *Vega-Alvarado v. Holder*, No. CV 09-5591-RSWL, 2011 WL 333101, at *2 (C.D. Cal. Jan. 28, 2011) (similar).

Because the INA uses physical presence and residence as separate terms, this Court must presume that Congress acted intentionally in doing so. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983)

(citation omitted). Furthermore, Congress has acquiesced to USCIS' determination that the terms have separate meanings because Congress has amended the INA, as recently as 2025, *see, e.g.*, Pub. L. No. 119-21, 139 Stat. 72 (2025), but has not made any changes to Section 1623 since it was first enacted. *See Barnhart v. Walton*, 535 U.S. 212, 220 (2002) (noting when Congress has amended or reenacted the relevant statutory provisions without change, these actions provide evidence that Congress understood the federal agency's statutory interpretation as permissible).

Congress made a deliberate choice to limit Section 1623's reach to schemes that condition in-state benefits to residence, not physical presence. This Court should afford that deliberate choice the meaning it deserves. S*ee Bostock v. Clayton County*, 590 U.S. 644, 653 (2020). ("When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law, and all persons are entitled to its benefit.").

The Colorado General Assembly also made a deliberate choice in the ASSET ACT: to provide in-state tuition and aid on the basis of high school completion and physical presence in Colorado, not residence. This Court should give "residence" and "physical presence" separate meanings, as federal and state law recognize. Because the ASSET Act determines eligibility on the basis of "physical presence," a term that is not synonymous with "residence," there is no conflict with Section 1623 and Plaintiff fails to state a claim.

### 3. Nonresidents are eligible for in-state status under the ASSET Act, demonstrating that eligibility is not "on the basis of residence."

Removing any doubt that eligibility under the ASSET Act is not "on the basis of residency," many non-Colorado residents qualify for in-state status under the law. *See Martinez*, 50 Cal. 4th at 1290 (finding California tuition law not based on residence for the simple reason that many nonresidents may qualify for it). To give just a few examples, students can meet the ASSET Act's criteria by living at, attending, and graduating from a Colorado boarding school. Students from all over the country, who are not Colorado residents, nevertheless can still qualify for in-state tuition and aid under the ASSET Act. Similarly, students who temporarily live with family members or friends in Colorado while attending public or private high school, or students who rent temporary housing or lodging, can qualify under the ASSET Act even though those students are nonresidents of Colorado. These are but a few of the many examples where nonresidents can qualify for eligibility. That the ASSET Act permits these students to maintain residence in another State but nonetheless meet the ASSET Act's criteria for in-state status demonstrates unequivocally that eligibility is not "on the basis of residence."

At bottom, Plaintiff seeks to expand and amend Section 1623 beyond the express statutory text, relying on the supposed purposes of the statute and legislative history. But Congress clearly and unequivocally addressed only eligibility "on the basis of residence." It did not address any other criteria, including criteria that may be

correlated with residence. Had Congress wanted to do so, it could have easily adopted broader or different language. And it is emphatically not a court's function to rewrite the statutory text to better meet supposed congressional purposes. *Martin v. United States*, 605 U.S. 395, 409 (2025) ("Whatever the reason, no amount of guesswork about the purposes behind legislation can displace what the law's terms clearly direct."); *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 381 (2025) ("When it comes to interpreting the law, speculation about what Congress may have intended matters far less than what Congress actually enacted."); *Stanley v. City of Sanford*, 606 U.S. 46, 58 (2025) ("[A]s this Court has 'emphasized many times,' what Congress (possibly) expected matters much less than what it (certainly) enacted.").

Further, the fact that Congress has repeatedly amended the INA but chosen not to amend Section 1623—with full knowledge that for decades many States across the country have adopted similar laws, avoiding the use of "residence" as eligibility criteria—is strong evidence that Congress intended this specific limited scope. If Congress is displeased with this outcome, Congress can amend the law. But a court's function is to apply the law that was actually adopted.

This case thus begins and ends with the express statutory language. Because the ASSET Act does not determine eligibility "on the basis of residence," and indeed provides eligibility for many non-Colorado residents, there is no conflict with Section 1623 and Plaintiff's claims fail.

**B. Nonresident citizens are eligible for the same benefits as those available to undocumented individuals under the ASSET Act.**

Even if the ASSET Act did make undocumented individuals eligible for benefits based on residence, and it does not, Section 1623 still does not preempt the ASSET Act because those same benefits are provided to nonresident U.S. citizens. As explained above, Section 1623 does not prohibit the provision of postsecondary education benefits to undocumented students on the basis of residence, rather, it prohibits favoring the provision of such benefits to undocumented students *over* others. So long as the State also makes “a citizen or national of the United States” “eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident,” there is no problem. 8 U.S.C. § 1623(a). Importantly, Section 1623 does not require that nonresident citizens who receive identical benefits as undocumented students do so under the same statutory provisions. In other words, although the ASSET Act permits undocumented students, as well as nonresident citizens, to be eligible for particular benefits associated with in-state student status based on high school attendance and graduation and physical presence, Section 1623 does not preempt it if *other* Colorado statutes confer the same in-state benefits on nonresident citizens.

Colorado makes nonresident citizens eligible for the same benefits provided under the ASSET Act through a variety of paths. For example, nonresident citizens are nevertheless eligible for the benefits associated with in-state student status, including reduced tuition and financial aid if (1) they are an unemancipated minor whose parents

were previously domiciled in Colorado for four years but have since moved from the State so long as they left the State after the student completed their junior year of high school and the student enrolls in a Colorado institution within three and one half years of the parents' move, C.R.S. § 23-7-103(2)(m)(II)(A); (2) they or their parent or spouse is or was a member of the armed forces who was stationed in Colorado on a permanent basis within the 12 previous years, C.R.S. § 23-7-103(1)(c)(I)(B)–(C); or (3) they are a registered member of a federally recognized American Indian tribe with historical ties to Colorado. C.R.S. § 23-7-112. Because Colorado makes nonresident citizens and nationals eligible for the same benefits available to undocumented students under the ASSET Act, that ends the inquiry and Plaintiff's claims fail.

Plaintiff attempts to complicate this straightforward conclusion by claiming that "illegal aliens present in the United States are not eligible for postsecondary education benefits based on state residency unless those same benefits are also offered to *all* American citizens, regardless of their state of residence." Compl. ¶ 24. This interpretation strains the law and inserts language that does not appear in the statute. As explained above, there are a number of Colorado statutes that make *any* citizen or national that meet those statutes' respective, nonresidency-based requirements eligible for in-state student status and its attendant tuition rate and other financial benefits. Yet Plaintiff's Complaint seems to suggest that Section 1623 requires Colorado to make *every* citizen and national eligible for the same benefits associated with in-state status under the ASSET Act, even if they do not qualify under any Colorado statute conferring

in-state student status. The assertion defies the most basic rules of statutory construction.

Congress chose to use “a citizen,” rather than “all citizens” in the relevant portion of Section 1623. 8 U.S.C. § 1623(a) (“[A]n alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit *unless a citizen or national of the United States* is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.”) (emphasis added). To ascertain Congress’s intent in doing so, the Court must start with the statutory language itself. *Banuelos v. Barr*, 953 F.3d 1176, 1180 (10th Cir. 2020). The words “all” and “a” have different meanings. “[I]n most contexts, the singular article ‘a’ refers to only one item.” *Id.* at 1181. And while, in context—including in statute—“a” can refer to multiple items, *id.*, Plaintiff provides no authority supporting the interpretation of “a” to mean “all.” Indeed, the statute’s later use of “the citizen or national”—a definite article—confirms that the earlier use of “a citizen” does not mean “all citizens.” *See Nielsen v. Preap*, 586 U.S. 392, 408 (2019) (“[G]rammar and usage establish that ‘the’ is ‘a function word . . . indicat[ing] that a following noun or noun equivalent is definite or has been previously specified by context.” (citation omitted)); *GreenLatinos v. Suncor Energy (U.S.A.), Inc.*, 184 F.4th 1171, 1187 (10th Cir. 2026) (“‘The’ is a definite article . . . and definite articles usually refer to something already ‘specifically provided for.’”). Thus, despite Plaintiff’s claims to the contrary, the use of the indefinite article “a”

in this context means "one or more"—not "all." *See Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 794 (2014) ("This Court has no roving license . . . to disregard clear language simply on the view that . . . Congress 'must have intended' something broader.") (citation omitted).

Because multiple categories of nonresident citizens and nationals qualify for the same postsecondary education benefits conferred on undocumented students by the ASSET Act, Section 1623 does not preempt it. *Walz*, 825 F. Supp. 3d at 911–12 (concluding that a Minnesota law was not preempted by Section 1623 for this reason).

## III. Section 1623 cannot preempt the ASSET Act.

Even if there were a conflict between Section 1623 and the ASSET Act, which there is not, Plaintiff's preemption claims fail for two interrelated reasons. First, because Section 1623 regulates States, not private actors, it is not a valid preemption statute. Second, adopting Plaintiff's reading of Section 1623 would violate the Tenth Amendment's anticommandeering doctrine.

### A. Section 1623 has no preemptive effect because it regulates States, not private actors.

"Preemption is based on the Supremacy Clause, and that Clause is not an independent grant of legislative power to Congress." *Murphy*, 584 U.S. at 477, 479. The Constitution only "confers upon Congress the power to regulate individuals, not States," and thus a federal statute that does not regulate private actors cannot serve as a basis for preemption. *New York v. United States*, 505 U.S. 144, 166 (1992). To prevail on its claim that Section 1623 preempts Colorado law, Plaintiff must demonstrate two things:

first, Section 1623 "must represent the exercise of a power conferred on Congress by the Constitution . . . . Second, since the Constitution 'confers upon Congress the power to regulate individuals, not States,'" Section 1623 "must be best read as one that regulates private actors." *Murphy*, 584 U.S. at 477 (quoting *New York*, 505 U.S. at 166).

Plaintiff's claims fail because Section 1623 dictates what a State and its legislature "may and may not do," and does not "impose[] restrictions or confer[] rights on private actors." *Id.* at 474, 477. Section 1623 purports to prescribe who shall or shall not be "eligible" for postsecondary education benefits, but "eligibility" for postsecondary education benefits is established by the State, not private actors. Indeed, Section 1623 is part of an entire subchapter that purports to prescribe what States may and may not do with respect to providing state public benefits. *See* 8 U.S.C. §§ 1621–1625. Courts have correctly interpreted Section 1623 as a directive to the States. *See, e.g.*, *Martinez,* 50 Cal. 4th at 1290 ("Section 1623(a) *prohibits a state* from making unlawful aliens eligible 'on the basis of residence within a State' for a postsecondary education benefit.") (emphasis added).

Section 1623 does not restrict undocumented students from accepting postsecondary education benefits based on state residency, nor does it restrict private universities from establishing postsecondary education benefits based on state residency. Indeed, there are absolutely no consequences at all for any private actor. Instead, the only enforcement is against the States, because the States are the only regulated party. While Section 1623's use of the passive voice obscures who is

prohibited from making undocumented students eligible for postsecondary education benefits, only States can set conditions for the disposition of state resources. As such, Section 1623 operates exclusively as a prohibition on *state* action and therefore has no preemptive effect.[3]

### B. Adopting Plaintiff's reading of Section 1623 would violate the anticommandeering doctrine.

Construing Section 1623 to have preemptive effect would not only contravene its plain meaning, it would also run headlong into the anticommandeering doctrine. Drawn from the Constitution's structure and the Tenth Amendment, the anticommandeering doctrine prevents Congress from "issu[ing] direct orders to the governments of the States." *Murphy*, 584 U.S. at 470–71. "The Framers' experience under the Articles of

---

[3] Two courts that recently addressed challenges to Section 1623(a) found it to be a valid preemption statute. *See United States v. Texas*, 181 F.4th 548, 559–60 (5th Cir. 2026); *United States v. Illinois*, No. 25-CV-1691-DWD, 2026 WL 2137256, at *7–8 (S.D. Ill. July 24, 2026). But this Court need not adopt their reasoning. First, given the posture of the Fifth Circuit case, the court may not have considered all relevant arguments. *See Texas*, 181 F.4th at 563, 573 (Ramirez, J., dissenting) (explaining that the "district court did not invite any substantive briefing—adversarial or otherwise—before entering the consent judgment," and that its futility analysis "overlooked issues relating to both its subject matter jurisdiction and . . . meritorious defenses to the United States' express preemption claim").

Moreover, other than conclusory statements that Section 1623(a) concerns "eligibility," neither court explained how Section 1623(a) could be understood to regulate private actors rather than the state laws establishing individuals' eligibility for such benefits. *See Texas*, 181 F.4th at 559–60 (stating that Section 1623(a) "declares a limitation on illegal eligibility itself and does not regulate states directly") (citation modified); *id.* at 560 ("Section 1623(a)'s self-executing provision 'merely targets offending *laws*.'"); *Illinois*, 2026 WL 2137256, at *7 (Section 1623 "regulates the eligibility of *individuals*, specifically individuals who are not lawfully present").

Confederation had persuaded them that using the States as the instruments of federal governance was both ineffectual and provocative of federal-state conflict." *Printz v. United States*, 521 U.S. 898, 919 (1997); *see also New York*, 505 U.S. at 165. The Framers ensured that "[n]o matter how powerful the federal interest involved," Congress cannot "require the States to govern according to [its] instructions." *New York*, 505 U.S. at 162, 178.

If a "federal interest is sufficiently strong to cause Congress to legislate, it must do so directly." *Id.* at 178. This not only "prevents Congress from shifting the costs of regulation to the States" but also makes clear which entity is responsible for a policy so that voters "know who to credit or blame." *Murphy*, 584 U.S. at 473–74. The upshot is simple: whether by telling States "what they must do" or "what they must not do," *id.* at 474 (citation omitted), the Federal Government cannot "conscript state governments" as its regulatory "agents," *New York*, 505 U.S. at 178.

Yet Section 1623, as Plaintiff would have this Court interpret it, would do just that: it impermissibly "issue[s] direct orders that dictate what a state legislature may and may not do," and "blur[s] the line between state and federal policy initiatives and priorities." *Colorado v. U.S. Dep't of Just.*, 455 F. Supp. 3d 1034, 1059 (D. Colo. 2020) (citations modified). Section 1623 tells States "what they must do" in determining eligibility for postsecondary education benefits: if Colorado makes undocumented students eligible for benefits based on residence, then it must make "a citizen or national of the United States" eligible, too, without regard to residency. From the other

angle, the statute tells States "what they must not do": make undocumented students eligible for benefits on the basis of residence without also offering those benefits to a U.S. citizen or national, regardless of residency. In a typical preemption case—where federal law operates on a private party—state law would make the private party eligible for a benefit even if federal law would disable a similarly situated private party from receiving it. But here, Section 1623 operates as a clear command to the States—they can make certain students eligible for benefits only on Congress's terms. And the States must use their agents and resources to administer this scheme on Congress's behalf. There is no federal enforcement, other than against States that are purportedly failing to administer Section 1623 properly on the federal government's behalf. Adopting Plaintiff's reading, Section 1623 would impermissibly commandeer the States in violation of the Tenth Amendment.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint.

Dated: October 1, 2026

Respectfully submitted,

**PHILIP J. WEISER**
Attorney General of Colorado

*/s/ David Moskowitz*
David Moskowitz
*Deputy Solicitor General*
Sara Bellamy
Gabe Podesta
Natalie Powell
Sarah H. Weiss
*Senior Assistant Attorneys General*

1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6000
david.moskowitz@coag.gov

Counsel for Defendants

CERTIFICATE OF CONFERRAL

I hereby certify under Civ. Practice Standard 7.1B, that Defendants' counsel conferred with Plaintiff's counsel via email on September 25, 2026 concerning this motion to dismiss and whether any deficiencies in Plaintiff's complaint were curable by the filing of an amended pleading.

/s/ David Moskowitz
David Moskowitz
*Deputy Solicitor General*