**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-cv-03329-CNS-TPO

UNITED STATES OF AMERICA,

Plaintiff,

v.

STATE OF COLORADO;
COLORADO COMMISSION ON HIGHER EDUCATION;
COLORADO DEPARTMENT OF HIGHER EDUCATION;
JB HOLSTON, in his official capacity as Executive Director of the Colorado Department of Higher Education,

Defendants.

---

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS**

---

## INTRODUCTION

The United States' Complaint asserts four claims for violation of the Supremacy Clause and requests a permanent injunction. The United States moves for summary judgment on all claims and asks that the Court find in its favor and enter the injunction.

The Federal Government has "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012) (citing *Toll* v. *Moreno*, 458 U.S. 1 (1982). This includes the authority to determine criteria for entry, the benefits and responsibilities that come with living in the United States, and deportations. *See Fong Yue Ting v. United States*, 149 U.S. 698, 711 (1893) ("The right to exclude or to expel all aliens, or any class of aliens, absolutely or upon certain conditions, in war or in peace, [is] an inherent and inalienable right of every sovereign and independent nation, essential to its safety, its independence, and its welfare . . . .").

Pursuant to that power, Congress has sought to prevent public benefits from serving as an incentive for illegal aliens to stay in the United States. Section 1623 of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") is a clear example of that goal being put into practice. It dictates that if illegal aliens are eligible for postsecondary education tuition benefits based on residency within a state, then U.S. citizens cannot be denied eligibility for those same benefits just because they live in another state. 8 U.S.C. § 1623 (1996).

President Trump further emphasized that congressional purpose when he issued Executive Order 14218, *Ending Taxpayer Subsidization of Open Borders*;[1] and Executive

[1] Exec. Order No. 14218, 90 Fed. Reg. 10581 (Feb. 19, 2025).

Order 14287, *Protecting American Communities From Criminal Aliens*.[2] Together, they reaffirm that state governments must not confer greater benefits to illegal aliens present in our Nation than to U.S. citizens.

Despite Congress's clear prohibition, the State of Colorado passed legislation that discriminates against U.S. citizens in favor of illegal aliens by making such aliens eligible for resident tuition, financial aid, and scholarships that are not available to U.S. citizens simply because they live in another state. That legislation is plainly preempted by federal law. Colorado's laws undermine Congress's declaration that "aliens within the Nation's borders [should] not depend on public resources to meet their needs, but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations." 8 U.S.C. § 1601(2)(A).

The challenged Colorado laws—Colo. Rev. Stat. §§ 23-7-110, 23-18-201, 23-3.3-1001, and 23-3.3-1003—are directly contrary to Section 1623. Section 1623 is clear that "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623 ("Section 1623"). Each of the challenged laws makes illegal aliens eligible for postsecondary education benefits based on residence. None of the challenged laws provides equal benefits to U.S. citizens or nationals of other states.

[2] Exec. Order No. 14287, 90 Fed. Reg. 18761 (Apr. 28, 2025).

Defendants seek to undermine the basic principles of federalism by taking control over immigration through state power because they disagree with federal immigration laws, policies, and priorities. The United States and its citizens are harmed by Colorado's flagrant constitutional violations. Accordingly, the Court should enter summary judgment in favor of the United States and enjoin Colorado from continuing to prioritize benefits to illegal aliens over U.S. citizens.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Defendant Colorado Commission on Higher Education ("CCHE") is the chief policy-making body overseeing all public education in the state, including the programs at issue in this lawsuit. *See* Colo. Rev. Stat. §§ 23-1-105, 23-2-103.1.

2. Defendant Colorado Department of Higher Education ("CDHE") implements the CCHE's policies, including the programs at issue in this lawsuit. *See id.* § 24-1-114.

3. Defendant JB Holston is the Executive Director of the Colorado Department of Higher Education. *See* Compl. ¶ 13.

4. In that capacity, Mr. Holston is responsible for implementing Colorado's student financial assistance programs, including, but not limited to, appointment of the members of the Colorado Opportunity Scholarship Initiative Advisory Board. Colo. Rev. Stat. § 23-3.3-1004(1).

5. Colorado charges two separate tuition rates at Colorado public universities, colleges, and community colleges: resident and nonresident tuition. *See id.* §§ 23-3.3-101, 23-7-110.

6. The Advancing Students for a Stronger Tomorrow ("ASSET") Act affords illegal aliens eligibility for in-state tuition benefits in Colorado while denying those same benefits to U.S. citizens who are not residents of Colorado. *See* Colo. Rev. Stat. § 23-7-110.

7. In 2022, the ASSET Act was amended to expand in-state tuition access to illegal aliens by reducing the Colorado high school attendance requirement from three years to one year and eliminating the requirement that a student be admitted to college within 12 months of graduation. *See* 2022 Colo. Legis. Serv. Ch. 234 (H.B. 22-1155) (West) (amending Colo. Rev. Stat. § 23-7-110).

8. Colorado makes illegal aliens eligible for state financial aid programs through CDHE's guidance that conditions state financial aid on meeting Section 23-7-110's requirements. Colorado Application for State Financial Aid, *CASFA Fact Sheet*, https://cdhe.colorado.gov/sites/highered/files/CASFA%20Fact%20Sheet%20ENG%207.23.24.pdf [https://perma.cc/W9UA-Y9BJ] (last visited Oct. 1, 2026).

9. As an alternative to the Federal Free Application for Federal Student Aid ("FAFSA"), Colorado offers the Colorado Application for State Financial Aid ("CASFA") for "students who are not eligible for Federal Student Aid, undocumented students or students from mixed status families." Colorado Department of Higher Education, *Colorado Application for State Financial Aid*, https://cdhe.colorado.gov/colorado-application-for-state-financial-aid [https://perma.cc/7ZQL-695L] (last visited Oct. 1, 2026).

10. Eligibility for state financial aid through CASFA is conditioned on graduation from a Colorado high school or physical presence in the State for at least a year preceding

completion of a high school equivalency examination and physical presence in Colorado for at least twelve consecutive months prior to enrolling in a postsecondary institution. Colorado Application for State Financial Aid, *CASFA Fact Sheet*, https://cdhe.colorado.gov/sites/highered/files/CASFA%20Fact%20Sheet%20ENG%207.23.24.pdf [https://perma.cc/W9UA-Y9BJ] (last visited Oct. 1, 2026).

11. CASFA accepts students who do not qualify as an ASSET student under Section 23-7-110. Colorado Department of Higher Education, *FAFSA Resources*, https://cdhe.colorado.gov/fafsa-resources [https://perma.cc/9MLQ-ZG5D] (last visited Oct. 1, 2026).

12. CASFA makes an illegal alien residing in Colorado eligible for financial assistance so long as the illegal alien satisfies, among other criteria, Colorado's residency requirements, while a U.S. citizen residing outside Colorado is not eligible. Compl. ¶ 47.

13. In 2004, Colorado statutorily created the Colorado College Opportunity Fund ("Fund"), "a trust fund for the benefit of eligible undergraduate students." *See* Colo. Rev. Stat. §§ 23-18-201–02.

14. Beginning with the state fiscal year commencing on July 1, 2005, and for each fiscal year thereafter, the Colorado General Assembly has made annual appropriations to the Fund. *Id.* § 23-18-202. The funds are disbursed as a per-credit-hour stipend to eligible students. *Id.*

15. To be "eligible" for the Fund, a student must be "enrolled at a state institution of higher education" and be "classified as an in-state student for tuition purposes." *Id.* § 23-18-102(5).

16. A student may use Section 23-7-110's requirements to establish classification as an in-state student to show eligibility for the Fund. *Id.* § 23-7-110(1)–(2).

17. Pursuant to state law, the Fund makes illegal aliens residing in Colorado eligible for financial assistance so long as they satisfy, among other criteria, Section 23-7-110's requirements, including residency, while a U.S. citizen residing outside Colorado is not eligible. Compl. ¶ 54.

18. The Colorado Opportunity Scholarship Initiative ("COSI") was signed into law in 2014 and is administered by the CDHE. Colorado Department of Higher Education, *About COSI*, https://cdhe.colorado.gov/about-cosi [https://perma.cc/795F-RWT8] (last visited Oct. 1, 2026). *See* Colo. Rev. Stat. § 23-3.3-1003.

19. The Executive Director of the CDHE (along with the Executive Director of the Department of Labor and Employment) is tasked with appointing the members of the COSI Advisory Board. *Id.* § 23-3.3-1004(1).

20. COSI awards scholarships or grants to eligible students to promote "student commitment to academic achievement and successful placement in the workforce." *Id.* § 23-3.3-1001(1)(a).

21. A student who satisfies Section 23-7-110's requirements qualifies as an in-state student and may be eligible for COSI. *Id.* § 23-3.3-101(2). *See also id.* § 23-7-102(5).

22. COSI does not require a social security number, affidavit stating immigration status, or any other identifier that may disqualify an illegal alien from applying. *See id.* § 23-3.3-1006.

23. COSI makes illegal aliens residing in Colorado eligible for financial assistance, so long as they satisfy, among other criteria, residency requirements, while a U.S. citizen residing outside Colorado is not eligible. Compl. ¶ 63.

24. COSI offers eligible students access to various scholarships, namely, the Matching Student Scholarships (MSS) and the Community Partnership Program (CPP). *Id.* ¶ 60.

25. Funds distributed through COSI assist students in covering the cost of attendance, graduating college, reducing the time to earn a degree, and reducing disparities between the academic achievements of certain students, among other things. Colo. Rev. Stat. § 23-3.3-1004.

26. Most public Colorado universities use Section 23-7-110's definition of "in-state" when deciding which students may qualify for the universities' own financial aid packages or scholarships. Compl. ¶ 64. *See* Colo. Rev. Stat. §§ 23-7-102(5), 23-7-110.

27. Through Section 23-7-110, illegal aliens residing in Colorado are eligible for scholarships so long as they satisfy, among other criteria, Colorado residency requirements, while a U.S. citizen residing outside Colorado is not eligible. Compl. ¶ 69.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003). "[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery." *Abdulmutallab v. Sessions*, No. 17-cv-02493-RM-KMT, 2018 WL 3348877, at

*1 n.2 (D. Colo. July 9, 2018) (quoting Fed. R. Civ. P. 56(b)). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 44 F.4th 959, 980 (10th Cir. 2022) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)).

## ARGUMENT

### I. The United States is Entitled to Summary Judgment Because the Challenged Colorado Laws are Preempted by Section 1623.

The United States is entitled to summary judgment on all four counts because each challenged Colorado law as applied to aliens not lawfully present in the United States is expressly preempted by Section 1623 of the IIRIRA. *See* Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (1996); 8 U.S.C. § 1623. Congress passed the IIRIRA in 1996 along with the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA"). *See* PRWORA, Pub. L. No. 104-193, 110 Stat. 2105 (1996). The congressional purpose of PRWORA and IIRIRA is to encourage self-sufficiency among immigrants, limit their dependence on public assistance, and prevent public benefits from serving as an incentive for illegal immigration. *See id.*; IIRIRA; *see also* 8 U.S.C. § 1601(1).

To preempt state law, a federal provision must, at a minimum, (1) "represent the exercise of a power conferred on Congress by the Constitution"; and (2) "be best read as one that regulates private actors." *Murphy v. NCAA*, 584 U.S. 453, 477 (2018). Express preemption occurs when Congress, by statute, explicitly supersedes all state enactments

in a particular area. *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 203–04 (1983).

Section 1623 falls squarely in this framework. It satisfies the first *Murphy* element because immigration is an enumerated power of the Federal Government and thus not reserved to the states. *See Arizona*, 567 U.S. at 394. It satisfies the second *Murphy* element because on its face, Section 1623 applies to "an *alien* who is not lawfully present in the United States," and places a restriction on such aliens and the conditions under which they may be eligible for postsecondary education benefits. 8 U.S.C. § 1623(a) (emphasis added). Those conditions are that citizens and nationals of the United States are "eligible" for the same benefit "without regard to whether the citizen or national is such a resident." *Id.* Section 1623 thus regulates individuals including aliens, U.S. citizens, and nationals. The statute does not mention the states or their legislatures at all. *See* 8 U.S.C. § 1623.

Finally, Section 1623 carries express preemption because it explicitly supersedes all state enactments in a particular area. *Pac. Gas*, 461 U.S. at 203–04. Federal statutes like Section 1623 may expressly preempt state laws by declaring that intent on the face of the statute. *Arizona*, 567 U.S. at 399; *see Est. of Montag By & Through Montag v. Honda Motor Co.*, 856 F. Supp. 574, 577 (D. Colo. 1994) *aff'd sub nom*. *Montag by Montag v. Honda Motor Co.*, 75 F.3d 1414 (10th Cir. 1996) (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)). Section 1623(a) dictates the conditions under which an illegal alien may be eligible for postsecondary education benefits "[n]otwithstanding any other provision of law,"—an express preemption clause. *United*

*States v. Oklahoma*, No. 25-cv-265-RAW-DES, 2025 WL 2815662, at *2 (E.D. Okla. Aug. 7, 2025), *report and recommendation adopted*, No. 25-cv-265-RAW-DES, 2025 WL 2815660 (E.D. Okla. Aug. 29, 2025).

"Preemption fundamentally is a question of congressional intent and when Congress has made its intent known through explicit statutory language, the courts' task is an easy one." *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990) (citations omitted). As a result, when the statute contains an express preemption clause, the court does not indulge "any presumption against preemption but instead focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Commonwealth of Puerto Rico v. Franklin California Tax-free Tr.*, 579 U.S. 115, 125 (2016) (quoting *Chamber of Commerce of United States of America v. Whiting*, 563 U.S. 582, 594 (2011)). Such is the case here.

Section 1623's preemptive effect is well established. *See Young Conservatives of Texas Found. v. Smatresk*, 73 F.4th 304, 313 (5th Cir. 2023) (Section 1623 "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same."); *United States v. Kansas*, No. 5:26-cv-04066-HLT-BGS, 2026 WL 2654069, at *3 n.3 (D. Kan. Sep. 9, 2026) (quoting 8 U.S.C. § 1623; *United States v. Texas*, 181 F.4th 548, 559 (5th Cir. 2026) ("Here, § 1623 applies '[n]otwithstanding any other provision of law.' This is an express preemption clause, so 'we do not indulge any presumption against preemption but instead focus on the plain wording of the clause, which necessarily contains the best evidence of Congress's preemptive intent.'"). In other words, "public post-secondary institutions need not admit illegal aliens at all, but if they

do, these aliens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit." *Equal Access Educ. v. Merten,* 305 F. Supp. 2d 585, 606 (E.D. Va. 2004).

Under Section 1623, a state law is preempted if it: (1) grants eligibility for a postsecondary education benefit "on the basis of residence within a State"; (2) extends that eligibility to "an alien who is not lawfully present in the United States"; and (3) does not also provide the same benefit eligibility "to a citizen or national of the United States" without regard to whether the citizen or national is a resident of the state. 8 U.S.C. § 1623; *see also United States v. Texas*, 350 F.R.D. 74, 80–81 (N.D. Tex. 2025) (denying intervention as futile because challenged Texas statutes made aliens not lawfully present eligible for in-state tuition on the basis of residence, while citizens and nationals of other states were not so eligible).

Each challenged law has these elements. Indeed, other courts have found similar state laws expressly preempted by Section 1623, including twice in this circuit. *See Oklahoma*, 2025 WL 2815662, at *1 (enjoining Oklahoma laws under which "individuals who are not lawfully present in the United States may qualify for in-state tuition or nonresident tuition waivers if they meet certain residency and high school graduation criteria" because the challenged laws were preempted by Section 1623's express preemption clause); *Kansas*, 2026 WL 2654069, at *6 (enjoining a similar law that purported to "confer[] a postsecondary education benefit on an unlawfully present alien based on a state-defined residency conclusion without making that same benefit generally available to United States citizens and nationals regardless of their residence.");

*see also Texas*, 181 F.4th at 554–59 (affirming a district court holding that Texas laws that allowed a student to establish residency for in-state tuition purposes by establishing domicile or residency in the state were expressly preempted by Section 1623 because such laws applied to aliens not lawfully admitted but did not provide the same eligibility to U.S. citizens and nationals of other states).

**A. The ASSET Act Is Expressly Preempted**

The ASSET Act extends eligibility for both in-state tuition and financial aid benefits based on residence. "[O]n the basis of residence" as used in Section 1623 means "but-for" causation. *See Texas*, 181 F.4th at 557 (construction § 1623(a)'s language of "on the basis of" as but-for causation). "But-for" causation means that the condition is a consideration of the statute, not the sole consideration of the statute. *See United States v. Ritter*, 167 F.4th 677, 684–85, 684 n.5 (4th Cir. 2026) (distinguishing but-for causation from sole causation and noting multiple but-for causes of the crime); *see also Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 769–70 (2018) (distinguishing between but-for and sole causation in statutory construction).

That residence is a consideration of the ASSET Act is apparent from the statutory text. The Act establishes criteria by which a student qualifies as an "in-state student":

> … a student, other than a nonimmigrant alien, must be classified as an in-state student for tuition purposes if:
>
> (a) The student either attended a public or private high school in Colorado for at least one year immediately preceding the date the student graduated from a Colorado high school or was physically present in Colorado for at least one year immediately preceding the date the student successfully completed a high school equivalency examination… and
>
> (b) The student has been physically present in Colorado for at least twelve consecutive months prior to enrolling in an institution.

Colo. Rev. Stat. § 23-7-110(1). Despite the absence of the term "residence," attendance at a Colorado high school and physical presence within a Colorado's borders for a full year is a near perfect indicator of residence. *See, e.g.*, Colo. Const. art. IX, § 2 ("The general assembly shall, as soon as practicable, provide for the establishment and maintenance of a thorough and uniform system of free public schools throughout the state, wherein all *residents of the state*, between the ages of six and twenty-one years, may be educated gratuitously.") (emphasis added).

Further, the Act extends access to the residence-based benefits to illegal aliens because there is no language in the statute or elsewhere that would prevent inclusion of illegal aliens. To the contrary, the Act provides that an in-state student without "lawful immigration status is eligible for the college opportunity fund program . . . and state student financial assistance . . ." Colo. Rev. Stat. Ann. § 23-7-110(2). Such person need only confirm his or her uniquely identifying student number provided by the local education provider where the student graduated from high school or successfully completed a high school equivalency examination. *Id.* Indeed, in 2025, Colorado amended the ASSET Act to remove a provision that required students without lawful immigration status to "submit an affidavit to the institution to which the student is admitted, stating that the student has applied for lawful presence or will apply as soon as he or she is eligible to do so," thereby removing any doubt that illegal aliens are eligible. Colo. Rev. Stat. § 23-7-110 (2013); *see* S.B. 25-276, 75th Gen. Assemb., 1st Reg. Sess. (Colo. 2025).

Finally, the ASSET Act does not provide any such benefit eligibility for U.S. citizens and nationals who reside in other states and instead excludes anyone who (1) has established residence in another state or (2) graduated from high school in another state.

Because the ASSET Act provides eligibility for a post-secondary education benefit (in-state tuition, the college opportunity fund program, and state student financial assistance) to aliens not lawfully present (the first prong of Section 1623), on the basis of residence within Colorado (the second prong), while explicitly excluding U.S. citizens and nationals of other states from eligibility (the third prong), it unlawfully operates in precisely the way that Congress proscribed. The ASSET Act is, therefore, expressly preempted as applied to illegal aliens, and the United States is entitled to summary judgment on Counts I–II of the Complaint.

**B. Colo. Rev. Stat. § 23-18-201 Is Expressly Preempted**

Section 23-18-201 likewise extends eligibility for a postsecondary education benefit based on residence. Specifically, it makes the Fund available to pay for "undergraduate courses and graduate-level courses that apply toward the student's undergraduate degree that are taken at a state or participating private institution of higher education." Colo. Rev. Stat. § 23-18-201(1). The Fund is available to all "eligible undergraduate students," *id.*, who are "enrolled at a state institution of higher education" and "classified as an in-state student for tuition purposes." *Id.* § 23-18-102(5). Criteria for classification as an in-state student are outlined in the ASSET Act. *See supra*, Section I.A. A student may therefore use the ASSET Act's residence-based criteria to establish classification as an in-state student. *Id.*

As discussed in the preceding section, the ASSET Act extends access to the residence-based postsecondary education benefits to illegal aliens. By incorporating the ASSET Act's criteria for qualification, Section 23-18-201 likewise extends eligibility for the Fund to illegal aliens. This is apparent on the face of the ASSET Act. *See id.* § 23-7-110(2) ("A student seeking tuition classification as an in-state student pursuant to this section who does not have lawful immigration status is eligible for the college opportunity fund program . . .").

Finally, neither the ASSET Act nor Section 23-18-201 offers any indication that the Fund is available to non-resident United States citizens, nor is Plaintiff aware of any. *See generally id.* § 23-18-201. Accordingly, Section 23-18-201 is expressly preempted by Section 1623, and the United States is entitled to summary judgment on Count III of the Complaint.

**C. Colo. Rev. Stat. §§ 23-3.3-1001 and 23-3.3-1003 Are Expressly Preempted**

Sections 23-3.3-1001 and 23-3.3-1003 likewise extend eligibility for scholarships and grants based on residence. They offer access to various funds distributed through COSI to assist students in covering the cost of attendance, graduating college, and reducing the time to earn a degree, among other things. Colo. Rev. Stat. §§ 23-3.3-1001, 23-3.3-1004. COSI is available to "in-state student" who satisfies certain other criteria. *Id.* § 23-3.3-1006. Thus, as with Section 23-18-201, a student who satisfies the ASSET Act's residence-based criteria is as an in-state student eligible for COSI. *Id.*

The same provision in the ASSET Act that extends eligibility for the Fund to illegal aliens does the same for COSI. *See id.* § 23-7-110(2) ("A student seeking tuition

classification as an in-state student pursuant to this section who does not have lawful immigration status is eligible for . . . state student financial assistance pursuant to article 3.3 of this title 23."). Nor does Colorado require a social security number, affidavit stating immigration status, or any other identifier that may disqualify an illegal alien from applying for COSI benefits. *See id.* § 23-3.3-1006.

Finally, there is no exception to COSI's residence-based requirements for U.S. citizens or nationals of other states. They are therefore ineligible. *See generally id.* §§ 23-3.3-1001 *et seq.*; 23-7-110. COSI, like the ASSET Act and Section 23-18-201, is expressly preempted by Section 1623. Accordingly, the United States is entitled to summary judgment on Count IV of the Complaint.

## II. The United States is Entitled to an Injunction.

Because the challenged laws are unconstitutional and preempted, the Court must permanently enjoin Defendants and the persons and entities identified in Fed. R. Civ. P. 65(d)(2), including the parties' successors and assigns, from enforcing challenged laws and any laws that are substantially similar in scope, to the extent that they apply to "aliens not lawfully present" in the United States. *See Sec. USA Servs., LLC v. Invariant Corp.*, No. 1:20-cv-01100-KWR-KRS, 2023 WL 3868240, at *2 (D.N.M. June 7, 2023) (nonparty may be bound as successor in interest).

To establish entitlement to an injunction, the United States is required to show the traditional injunction factors, namely, that "(1) it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and

defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Irreparable harm often occurs when "the injury cannot be adequately atoned for in money." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001) (cleaned up). The balance of harms and public interest factors "merge when the Government is the opposing party." *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Here the injunction factors are easily met.

***First***, the United States has suffered irreparable injury and there is no remedy at law. Control over immigration is both a sovereign prerogative and an enumerated power of Congress. *Arizona*, 567 U.S. at 394–95. Federalism as embodied in the Constitution requires that certain powers belong to the national sovereign, while others are reserved to the states. *Murphy*, 584 U.S. at 470. Immigration belongs to the "national sovereign, not the 50 separate States." *Arizona*, 567 U.S. at 395. Yet, Colorado seeks to upset this constitutional order by establishing its own immigration policy via state laws, in direct conflict with federal immigration law. Colorado's frustration of that order causes irreparable harm to the United States. *See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 366–67 (1989) (suggesting that "irreparable injury may possibly be established … by a showing that the challenged state statute is flagrantly and patently violative … of the express constitutional prescription of the Supremacy Clause"); *United States v. Arizona*, 641 F.3d 339, 366 (9th Cir. 2011) (finding irreparable harm where Supremacy Clause is violated); *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009) (same).

The United States is also irreparably harmed because Colorado's challenged laws frustrate its immigration laws and policies. Congress, with Section 1623, chose to limit eligibility for postsecondary education benefits for aliens not lawfully present unless U.S. citizens and nationals of other states were equally eligible without regard to residence. That was in keeping with Congress's express statements of national immigration policy found in Section 1601. *See* 8 U.S.C. § 1601(2)(A) ("[A]liens within the Nation's borders [should] not depend on public resources to meet their needs, but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations."); *id.* § 1601(2)(B) ("[T]he availability of public benefits [should] not constitute an incentive for immigration to the United States."); *id.* § 1601(5)–(6) ("It is a compelling government interest to enact new rules for eligibility and sponsorship agreements in order to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits.").

Congress also instructed that "the immigration laws of the United States should be enforced vigorously and uniformly," *see* Immigration Reform and Control Act of 1986, Pub. L. No. 99–603, § 115(1), 100 Stat. 3359, 338. Against this backdrop, President Trump issued Executive Order 14218, *Ending Taxpayer Subsidization of Open Borders*, ordering federal departments and agencies to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens,"[3] and Executive Order 14287, *Protecting American Communities From Criminal Aliens*, directing federal officials

[3] Exec. Order No. 14218, 90 Fed. Reg. 10581 (Feb. 19, 2025).

to ensure the "[e]qual [t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful, preempted by federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens."[4]

Colorado chose to undermine Congress with its challenged laws. But individual states "may not pursue policies that undermine federal law." *Arizona*, 567 U.S. at 416. Without this Court's intervention, the challenged laws will impede the Federal Government's law and policy expressed in Section 1623, allowing the State to supplant the will of the Federal Sovereign in an area of law expressly assigned to the Federal Sovereign's political branches. Furthermore, a failure to enjoin these laws will invite other States to enact their own laws, resulting in a patchwork system of laws severely undermining the "integrated scheme of regulation created by Congress." *Arizona*, 567 U.S. at 402 (internal quotations and citation omitted). The Supreme Court has repeatedly made clear that such state laws must be struck down. *See In re Loney*, 134 U.S. 372, 375–76, (1890) (holding that states may not impose their own punishment for perjury in federal courts*); Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347–48, (2001) (holding that states may not impose their own punishment for fraud against the Food and Drug Administration); *Wisconsin Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*, 475 U.S. 282, 288 (1986) (holding that states may not impose their own punishment for repeat

[4] Exec. Order No. 14287, 90 Fed. Reg. 18761 (Apr. 28, 2025).

violations of the National Labor Relations Act). The only remedy for such harms is to enjoin the laws; there is no adequate remedy at law.

***Second***, the balance of hardships and public interest tip decidedly in favor of the United States. The public has a strong interest in maintaining our system of federalism and the Constitutional lines drawn between Federal and State power and has no interest in enforcing Colorado's unconstitutional laws. *See, e.g. Colorado Christian Univ. v. Sebelius*, 51 F. Supp. 3d 1052, 1064 (D. Colo. 2014) (citing *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 771 (10th Cir. 2010) ("Generally, the public interest is served by enjoining the enforcement of a law that likely violates the Constitution.")). The public does, however, have a strong interest in enforcing its own political choices represented through the immigration laws enacted by Congress. *See Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d. 1211, 1221 (D.C. Cir. 1981) (collecting cases) ("[T]he public interest in enforcement of the immigration laws is significant."). To the extent Coloradoans disagree with federal immigration policy, they can address those concerns to their elected representatives in the U.S. Congress. Moreover, there is little hardship to Defendants because the challenged laws need only be enjoined as applied to illegal aliens. Thus, the United States is entitled to injunctive relief.

## CONCLUSION

For the foregoing reasons, the Court grant should this motion and enter judgment in Plaintiff's favor.

Dated: October 1, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

HILARY K. PERKINS
Director
Enforcement & Affirmative Litigation Branch

JACQUELINE COLEMAN SNEAD
Deputy Director
Affirmative Litigation Section

<u>*/s/ Luke A. Miller*</u>
LUKE A. MILLER
United States Department of Justice
Civil Division
Enforcement and Affirmative Litigation Branch
950 Pennsylvania Ave NW
Washington, D.C. 20530
Tel: (202) 598-7479
Email: Luke.Miller2@usdoj.gov

*Attorneys for the United States of America*